IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GENE GUHNE,                        )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        1:20-cv-925
                                   )
CERIDIAN HCM, INC.,                )
                                   )
                Defendant.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This case arises from the termination of Plaintiff Gene Guhne's employment with Defendant Ceridian HCM, Inc. ("Ceridian"). Before the court is Ceridian's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, to dismiss in part for *forum non conveniens*. (Doc. 15.)  While Guhne alleges eight claims, the company moves for judgment on the pleadings in relation to claims three through eight, which allege, respectively: (3) unpaid wages under North Carolina's Wage and Hour Act ("WHA"), N.C. Gen. Stat. §§ 95-25, et seq.; (4) breach of contract; (5) fraudulent inducement; (6) negligent misrepresentation; (7) violations of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), §§ 75-1.1 et seq.; and (8) unjust enrichment.[1]  In the alternative, Ceridian

---

[1] Guhne also brings two claims for age discrimination, which are not at issue in the present motion.

moves for dismissal of claims three and eight for *forum non conveniens*. Also before the court is Ceridian's motion to seal certain documents. (Doc. 13.) For the reasons set forth below, the motion for judgment on the pleadings will be granted in part and denied in part, the alternative motion for *forum non conveniens* will be denied as moot, and the motion to seal will be granted.

## I. BACKGROUND

The factual allegations of the complaint, as relevant to the pending motions and viewed in the light most favorable to Guhne, show the following:

Ceridian sells software that assists businesses with human resource functions, including payroll, benefits, workforce management, and talent management. (Doc. 1 ¶ 10.) Up until 2018, Guhne had a "long and successful career" in sales at one of Ceridian's leading competitors, Ultimate Software ("Ultimate"). (Id. ¶¶ 11-12.)

In early 2018, Guhne was approached by Ceridian's Chief Revenue Officer ("CRO"), Ted Malley, to join the company. (Id. ¶ 16.) Ceridian, through Malley, represented that if Guhne accepted employment with Ceridian, he would quickly be promoted to Executive Vice President of Global Sales or Senior Vice President of North America Sales. (Id. ¶ 19.) Knowing that Guhne also had a "significant equity stake in Ultimate" valued at approximately $500,000 that would vest in the coming 18 months, Malley also

2

represented that Guhne would be awarded 75,000 stock options in Ceridian, subject to approval from the Board of Directors, which Malley indicated was a "mere formality." (Id. ¶¶ 17, 19-20, 22; Doc. 12-1.) In reliance on these representations, Guhne accepted Ceridian's offer of employment. (Doc. 1 ¶¶ 17, 22.)

Guhne was compensated in part based on Ceridian's Sales Incentive Plan ("the Commission Plan"). (Id. ¶ 58.) The Commission Plan terms indicated that commission payments "are earned at the time of payment" and that "Ceridian shall only be responsible for paying commissions . . . 'earned' . . . up to the effective date of termination." (Doc. 12-4 at 22, 24.) The Commission Plan further specified that, "For clarity, no commissions . . . can be earned after the last month of [] employment with Ceridian." (Id. at 24.) Under the terms of the Commission Plan, employees would receive 50% of the commission for sales worth over five million dollars in the month following the sale and 50% one year later. (Doc. 1 ¶ 60; Doc. 12-5 at 3.)

In late April 2018, after starting with Ceridian, Guhne was informed that his stock option award was reduced from the promised 75,000 shares to 40,761 shares, allegedly due to an unexpected stock split that occurred shortly after he accepted the offer. (Id. ¶¶ 24, 27.)

In early 2019, under the direction of new President Leigh Turner, Ceridian's sales group was reorganized. (Id. ¶¶ 34, 36.)

3

Instead of being promoted to Executive Vice President of Global Sales or Senior Vice President of North America Sales, Guhne was given the role of Head of the East Coast Division. (Id. ¶ 36.) In that position, he was assigned a number of inexperienced team members and, as a result, the team did not bring in a large volume of sales in 2019. (Id. ¶¶ 45-47.) Despite this, Guhne met his personal sales goals each month and, in December 2019, was able to land two large accounts, each worth over five million dollars. (Id. ¶¶ 49-54, 61.) Even so, on November 8, 2019, he was informed that he would be terminated due to unspecified performance issues, and he was subsequently terminated on December 31, 2019. (Id. ¶¶ 54-55.)

Thereafter, Guhne was unable to seek re-employment with Ultimate due to Ultimate's strict prohibition on re-hiring individuals who left the company. (Id. ¶¶ 14-15.) Ceridian allegedly knew of this policy and used it to its advantage by recruiting and subsequently terminating Guhne specifically to remove a competing salesperson from the market. (Id.)

On January 23, 2020, consistent with the Commission Plan, Guhne received payment for 50% of the outstanding commissions for his December 2019 sales, worth $125,275. (Id. ¶¶ 62, 73.) At that time, he contacted Ceridian to confirm that he would receive the remaining 50% of the commissions, but he received no response. (Id. ¶ 64.)

4

On April 3, 2020, Guhne filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (Id. ¶ 65.)

In June 2020, Ceridian informed him that he would not receive the remaining 50% of the commissions on the sales he made in December 2019. (Id. ¶ 66.) In light of this, on August 6, 2020, he filed a charge of retaliation in violation of the ADEA with the EEOC. (Id. ¶¶ 67-68.)

On October 7, 2020, Guhne filed the present lawsuit. (Doc. 1.) Ceridian timely filed an answer along with five exhibits. (Doc. 12.) At the same time, Ceridian moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, a partial dismissal for *forum non conveniens* (Doc. 15), and to seal certain documents submitted with its answer (Doc. 13). All motions are fully briefed and ready for resolution. (See Docs. 14, 16, 19, 21.)

## II. ANALYSIS

### A. Motion for Judgment on the Pleadings

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule

5

12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In applying this standard, the court must accept as true the facts alleged in the complaint and all reasonable inferences must be drawn in the plaintiff's favor. Burbach, 278 F.3d at 405-06; Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept the legal conclusions drawn from the facts." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts," and a court does not consider "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678 (explaining

6

that mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 555)).

On a Rule 12(c) motion, unlike on a Rule 12(b)(6) motion, the court may consider the answer as well as the complaint. <u>Alexander v. City of Greensboro</u>, No. 1:09-CV-293, 2011 WL 3360644, at *2 (M.D.N.C. Aug. 3, 2011). The "factual allegations in the answer are taken as true to the extent they have not been denied or do not conflict with the complaint." <u>Farmer v. Wilson Hous. Auth.</u>, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (internal quotation marks omitted); <u>see also</u> <u>Jadoff v. Gleason</u>, 140 F.R.D. 330, 331 (M.D.N.C. 1991). For the "purposes of this motion[,] [a] [d]efendant cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint" because a plaintiff is "not required to reply to [a] [d]efendant's answer, and all allegations in the answer are deemed denied." <u>Jadoff</u>, 140 F.R.D. at 332; <u>see</u> Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided."). A motion for judgment on the pleadings is properly granted only if taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain and the case can be determined as a matter of law. <u>Smith v. McDonald</u>, 562 F. Supp. 829, 842 (M.D.N.C. 1983), <u>aff'd</u>, 737 F.2d 427 (4th

7

Cir. 1984), aff'd, 472 U.S. 479 (1985); Med-Trans Corp. v. Benton, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008); see also Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In "determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference in the pleadings" without converting the motion into one for summary judgment. Farmer, 393 F. Supp. 2d at 386 (internal quotation marks omitted) (citing Parks v. Alteon, Inc., 161 F. Supp. 2d 645, 649 n.1 (M.D.N.C. 2001)). However, documents attached to the answer are part of the pleadings for Rule 12(c) purposes only if the documents are integral to the complaint and authentic. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016); Pulte Home Corp. v. Montgomery Cnty., MD, 909 F.3d 685, 693 (4th Cir. 2018) (applying Goines in the 12(c) context). A document is considered integral to the complaint where the complaint relies heavily upon its terms and effect, or the document has an independent legal significance to the claim. See Goines, 822 F.3d at 166. "When the plaintiff . . . incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document," the court may credit the document over conflicting allegations in the complaint. Id. at 167. However, it is inappropriate to treat the contents of a document as true where the plaintiff incorporates the document for purposes other than its truthfulness. Id. "The

8

purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant." Id. at 168.

### 2. Documents Attached to the Answer

Ceridian has attached five exhibits to its answer that it contends the court should consider: Ceridian's offer letter to Guhne (Doc. 12-1); Ceridian's 2018 equity incentive plan prospectus (Doc. 12-2); a consent form to Ceridian's Commission Plan's terms and conditions (Doc. 12-3); Ceridian's 2019 global sales policy (Doc. 12-4); and Guhne's 2019 personal sales incentive compensation plan (Doc. 12-5). Guhne argues that the court should not consider these documents as part of the pleadings because "their existence is not admitted on the face of the [c]omplaint and they are deemed disputed." (Doc. 19 at 8 (internal quotation marks omitted).) In response, Ceridian argues that each of the documents is authentic and central to Guhne's claims. (Doc. 21 at 2.) Before proceeding to the dispositive motion, therefore, the court must examine each document to determine whether it should be considered in assessing whether Guhne's claims are plausibly stated.

### a. The Offer Letter

Ceridian first attaches a copy of Ceridian's offer letter to Guhne dated March 20, 2018. (Doc. 12-1.) Although Guhne argues that the existence of this document is not admitted on the face of

the complaint (Doc. 19 at 7-8), this is inaccurate. The complaint specifically indicates that Guhne's breach of contract claim is based on his written offer of employment. (See Doc. 1 ¶¶ 105-06 ("As part of the offer of employment . . . Guhne was assured, in writing, that Ceridian's Board of Directors, would approve th[e stock option] award if [] Guhne accepted the offer of employment . . . . Guhne accepted Ceridian's offer of employment.") (emphasis added); see also id. ¶¶ 28-29.) Moreover, the document is integral to the complaint in that Guhne's breach of contract claim is based upon Ceridian's alleged violation of the terms of the offer letter. (Id. ¶¶ 105-108.) Because the offer letter is both integral to the complaint and its existence is not disputed, it may be considered in evaluating the present motion.[2]

### b. The Equity Incentive Plan Prospectus

Ceridian next attaches a copy of its 2018 equity incentive plan prospectus. (Doc. 12-2.) Ceridian argues that this prospectus is integral to the complaint because the prospectus is incorporated in the offer letter and is central to several of

---

[2] Although Guhne suggests that the offer letter is inadmissible because Ceridian failed to authenticate it, documents may be considered on a Rule 12(c) motion if "the authenticity is not challenged." Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Here, Guhne's opposition fails to actually challenge the authenticity of the offer letter. (See Doc. 19 at 7-9.) Additionally, in reply to Guhne's opposition, Ceridian has authenticated the offer letter through the affidavit of Susan Tohyama. (Doc. 21-1.)

Guhne's claims.[3]  (Doc. 21 at 2.)  However, unlike the offer letter, the prospectus is never mentioned or incorporated by reference on the face of the complaint.  (See Doc. 1.)  Additionally, the prospectus does not appear to be integral to Guhne's claims because, while he makes claims relating to the issuance of stock, his claims do not arise from representations made within the prospectus.  Rather, the claims pertaining to his stock options involve the oral representations made by Malley.  While the prospectus may be integral to Ceridian's defenses, it cannot be considered at the pleadings stage on that basis.  Because the complaint does not explicitly incorporate the prospectus and the prospectus lacks an independent legal significance to Guhne's claims, its existence is deemed disputed and the court will not consider it here.[4]

### c.  Commission Plan Documents

Ceridian lastly offers a consent form to Ceridian's Commission Plan's terms and conditions (Doc. 12-3), Ceridian's 2019 global sales policy (Doc. 12-4), and a copy of Guhne's 2019 sales incentive compensation plan (Doc. 12-5), collectively "the

---

[3] Although the offer letter references Ceridian's 2013 equity incentive plan prospectus (Doc. 12-1), Ceridian has submitted an unchallenged affidavit and exhibit showing that the 2013 and 2018 prospectuses are the same (see Doc. 21-1).

[4] As mentioned above, the prospectus is referenced in the offer letter. (See Doc. 12-1.)  However, the court is unwilling to accept the document as integral to the complaint on that basis alone.

commission plan documents." Ceridian argues that these documents are the "sole basis for determining Guhne's entitlement to commissions" which is key to his claim of unpaid wages under the WHA. (Doc. 21 at 2.) Although Guhne does not challenge the authenticity of these documents, he argues that the existence of these documents is not admitted on the face of the complaint and contests their relevance. (See Doc. 19 at 8-9.) Yet, the complaint contains multiple references to Ceridian's Commission Plan. (See Doc. 1 ¶¶ 58-60 (describing administration of the Commission Plan and explaining "Guhne was entitled to participate in Ceridian's [Commission Plan] . . . . Guhne was entitled to earn commissions . . . [p]ursuant to the Commission Plan which was revised in 2019").) In addition to admitting the existence of the plan, Guhne plainly bases his claim for unpaid wages on it. (See id. ¶¶ 98-100 ("Ceridian has not paid [] Guhne commissions . . . pursuant to Ceridian's commission policy.").) As the existence of the Commission Plan is admitted on the face of the complaint and his claim for unpaid wages is based on it, the commission plan documents may be considered in the present motion as integral to the complaint and authentic.

Having resolved the scope of the documents that can properly be considered at this stage, the court turns to the specific claims

being challenged.[5]

### 3. Unpaid Wages Under the Wage and Hour Act

Guhne brings a claim for one violation of the WHA based upon Ceridian's failure to pay him the outstanding 50% commissions on his December 2019 sales. (Id. ¶¶ 98-99.) Ceridian argues that judgment on the pleadings is appropriate because Guhne was paid all commissions that he earned under the Commission Plan and any outstanding commissions were forfeited upon his termination, as provided by the Commission Plan. (Doc. 16 at 10-12.) In response, Guhne argues that he is entitled to payment for all commissions on sales he made during the employment relationship and that Ceridian was prevented from rescinding those commissions. (Doc. 19 at 10-11.)

The WHA and its related regulations recognize and protect commissions as wages. See N.C. Gen. Stat. § 95-25.2 (defining "wages" to includes commissions); 13 N.C.A.C. 12.0307(a) (permitting employers to pay wages as commissions). In line with

---

[5] Ceridian moves for judgment on claims three through eight pursuant to Rule 12(c) or, in the alternative, dismissal of claims three and eight for *forum non conveniens*. "A *forum non conveniens* dismissal denies audience to a case on the merits; it is a determination that the merits should be adjudicated elsewhere." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007) (internal punctuation and citations omitted). As the motion for dismissal for *forum non conveniens* is pleaded in the alternative, Ceridian seeks consideration of the merits of its motion first. (See Doc. 16 at 22 ("If the Court declines to dismiss Claims Three and Eight with prejudice for failure to state a claim, then it should dismiss these claims without prejudice pursuant to the *forum non conveniens* doctrine.").) For this reason, the court reaches the Rule 12(c) motion first.

13

these regulations, an employer must "notify employees of the employer['s] policies and practices concerning pay, [and] wages based on . . . commissions," 13 N.C.A.C. 12.0307(b), including under what conditions commissions will be paid upon termination of employment, 13 N.C.A.C. 12.0307(d)(2). An employee "whose employment is discontinued for any reason shall be paid all wages due." N.C. Gen. Stat. § 95-25.7. "Wages based on . . . commissions . . . shall be paid on the first regular payday after the amount becomes calculable when a separation occurs." Id. "Such wages may not be forfeited unless the employee has been notified in accordance with [N.C. Gen. Stat. §] 95-25.13 of the employer's policy or practice which results in forfeiture." Id. If the employee is "not so notified," he is "not subject to such loss or forfeiture." Id. Section 95-23.13 provides that employers must "(1) [n]otify its employees, orally or in writing at the time of hiring, of the promised wages and the day and place for payment; [and] (2) [m]ake available to its employees, in writing[,] . . . employment practices and policies with regard to promised wages." Ambiguous policies and practices are "construed against the employer and in favor of employees." 13 N.C.A.C. 12.0307(c).

The parties contest when Guhne is considered to have earned the second half of his commission payments.[6] Guhne argues that he

---

[6] The parties agree that Guhne earned the first half of the relevant commission payments and was paid them in January 2020. (See Doc. 16 at

14

earned 100% of the commissions because he performed the work required to earn the commissions prior to his termination, citing this court's opinion in Irwin v. Fed. Express Corp., No. 1:14-CV-00557, 2016 WL 7053383, at *8 (M.D.N.C. Dec. 5, 2016) ("Earned wages are those wages and benefits due when the employee has actually performed the work required to earn them." (quoting Whitley v. Horton, No. COA03-1459, 2005 WL 351143, at *5 (N.C. Ct. App. 2005) (internal quotation marks omitted) (emphasis in original)). (Doc. 19 at 10.) Guhne also points to his 2019 sales incentive compensation plan which indicates that commissions on sales worth over five million dollars "will be *paid* [not earned] on 50% at time of booking and 50% after 12 months." (Doc. 12-5 at 3 (emphasis added).) Meanwhile, Ceridian points to the definition of "earned" in the 2019 global sales policy to show that Guhne did not earn the commissions merely by performing the work, but at the time of payment. (Doc. 12-4 at 22 ("All other incentive plan elements . . . are *earned* at the time of payment." (emphasis in original)).).[7] Regardless, however, of which definition of

---

12; Doc. 19 at 11.)

[7] Guhne contends that "payment" is ambiguous, as it could mean either payment by Ceridian, or payment by the client to Ceridian. (Doc. 19 at 14-15.) This is not a reasonable reading of the documents. The documents revolve around the payment of commissions by Ceridian to employees, not payment by clients. (See Doc. 12-3 at 2 ("The [Commission] Plan sets forth the terms and conditions under which the employee . . . could receive incentive payments from Ceridian . . . .").) In line with that, the documents consistently use the term "payment" to refer to payments by Ceridian to employees. For example, the 2019 sales incentive

"earned" is applied, by the terms of the Commission Plan, Guhne forfeited his right to payment when his employment was terminated.

Pursuant to the WHA, certain earned wages – including commissions – may be forfeited with appropriate notice. Here, the Commission Plan is clear: "In the case of a termination . . . Ceridian shall only be responsible for paying out commissions/bonuses 'earned', as previously defined, up to the effective date of termination . . . . For clarity, no commissions/bonuses can be earned *after* the last month of (i) employment with Ceridian . . . ." (Doc. 12-4 at 24 (emphasis in original).) Combined with the Commission Plan's indication that commissions "are earned at the time of payment," (id. at 22), and that 50% of the commissions for sales worth over five million dollars are paid one year after the sale (12-5 at 3), it is unambiguous that a condition to receiving certain commissions is to remain employed with Ceridian through the one-year period following the first billing event. Guhne has not alleged that he did not receive the commission plan documents that outline the Commission Plan – in fact, a number of his claims are based

---

compensation plan (upon which Guhne relies) refers to "payment timing" in discussing when employees will receive commission payments. (Doc. 12-5 at 3.) The same document includes a "payment schedule" that shows the dates when employees can expect payment. (Id.) There is no indication from any of the commission plan documents that the term "payment" is used to refer to payments from clients; the only reference to payments by clients is the phrase "billing event." (See Doc. 12-4 at 22; Doc. 17-1 at 3.)

16

expressly on that plan.  (See e.g., Doc. 1 ¶¶ 98–100.)  As the
Commission Plan clearly outlines the requirements to receive
commissions, including the one-year anniversary provision, Guhne
has received appropriate notice in line with N.C. Gen. Stat. § 95-
23.13.  Therefore, his right to the remaining 50% of the December
2019 commissions is considered forfeited under the WHA.  See also
McCabe v. Abbott Labs., Inc., 47 F. Supp. 3d 339, 348 (E.D.N.C.
2014).  Judgment on this claim will be rendered in favor of
Ceridian.[8]

### 4.  Breach of Contract

Ceridian next moves for judgment as to Guhne's claim that it
breached the terms of its offer letter.  The complaint alleges
that, "[a]s part of the offer of employment to [] Guhne, Ceridian
promised 75,000 shares of stock options in Ceridian.  [] Guhne was
assured, in writing, that Ceridian's Board of Directors, would
approve this award."  (Doc. 1 ¶ 105.)  In response, Ceridian
argues, first, that it did not breach the terms of the offer
because the offer promised only that Ceridian would "recommend
that [its] Board of Directors provide" Guhne with the 75,000 shares
of stock, which is not sufficiently definite to constitute an
enforceable promise.  (Doc. 16 at 14; see Doc. 12-1.)  Second,

---

[8] To the extent Guhne argues that Ceridian denied him further commissions
in bad faith based upon the filing of his ADEA claim (Doc. 19 at 16),
it is duplicative of his retaliation claim (Doc. 1 ¶ 90), which is not
currently under consideration.

17

Ceridian argues, even if the promise were sufficiently definite to constitute a binding promise, Ceridian lived up to its obligation by making the subject recommendation. (Doc. 16 at 14.)

By the terms of Guhne's offer letter, the offer is governed by the laws of Minnesota.[9] (Doc. 12-1 at 3.) Under Minnesota law, the essential elements for a breach of contract claim are the existence of a valid contract and a breach of the terms of that contract. Olson & Assocs. v. Leffert, Jay & Polglaze, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). For a promise to be contractually enforceable, the promise must be both specific and definite. Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1983). Where an alleged contract is so vague, indefinite, and uncertain as to render the meaning and intent of the parties subject to speculation, the agreement is void and unenforceable. King v. Dalton Motors, Inc., 109 N.W.2d 51, 52 (Minn. 1961).

Here, Ceridian argues that there was no enforceable promise because it merely indicated that it would recommend a specific course of action and recommendations "allow for discretion" such that "they do not constitute specific and definite enforceable promises." (Doc. 21 at 7.) This argument is unavailing. Per the terms of the offer letter, Ceridian promised to make a specific recommendation to the Board to grant Guhne 75,000 shares of stock.

_____

[9] The parties do not contest this. (See Doc. 16 at 13-14 (citing Minnesota law); Doc. 19 at 18 (same).)

18

(Doc. 12-1.) Although this does not constitute a binding promise for 75,000 shares, it certainly constitutes a binding promise to make such a recommendation. The promise is neither vague nor indefinite. As such, there surely was a contractual agreement to make the recommendation to the Board.

Ceridian next argues that even if there were a binding agreement to make the subject recommendation, Ceridian lived up to its obligation by making that recommendation. (Doc. 16 at 14.) Guhne argues in response that, based on the totality of the circumstances, Ceridian was not only required to make the subject recommendation, but also to actually award the promised 75,000 shares. (Doc. 19 at 18-19.)

"The parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with the execution of a written instrument when that evidence contradicts or varies the terms of the written agreement." Material Movers, Inc. v. Hill, 316 N.W.2d 13, 17 (Minn. 1982) (citations omitted). Where an agreement is ambiguous or incomplete, extrinsic evidence is admissible to establish the parties' intent. Id. Although "[a] determination of whether the written document is a complete and accurate 'integration' of the terms of the contract is not made solely by an inspection of the writing itself," Bussard v. Coll. of St. Thomas, Inc., 200 N.W.2d 155, 161 (Minn. 1972), "[a] merger clause establishes that the parties intended the writing to

19

be an integration of their agreement." <u>Alpha Real Est. Co. of</u> <u>Rochester v. Delta Dental Plan of Minn.</u>, 664 N.W.2d 303, 312 (Minn. 2003).

Here, Guhne argues that the court should consider Malley's representations, made prior to the issuance of the offer letter, that the Board's approval was a "mere formality," such that the offer letter should be interpreted as containing a binding promise to award Guhne 75,000 in stock options. However, the text of the employment offer — which promises only that a recommendation would be made – conflicts with Guhne's proposed interpretation of the contract. Further, the offer contains an express merger clause, providing:

> Your acceptance of this offer represents the sole agreement between you and Ceridian. No promises, representations, or understandings are part of this agreement unless referred to in this letter or the signed attachments to this letter.

(Doc. 12-1 at 3.) This indicates that the parties intended the letter to be a complete and accurate representation of their agreement. There are no countervailing facts that would suggest that the parties intended otherwise. As such, the court declines to consider representations allegedly made by Malley prior to the issuance of the offer letter to modify its written terms.

However, an issue of fact remains. Specifically, Guhne has alleged that Ceridian did not, in good faith, make the promised recommendation to the Board. (Doc. 19 at 19; <u>see also</u> Doc. 1

20

¶¶ 23-27.)  Although Ceridian contends that it "indisputably made" the promised recommendation and awarded more stock than promised after a stock split (Doc. 16 at 14), neither party's pleadings speak directly to this issue.  As such, whether or not this issue is amenable to summary judgment, judgment on the pleadings will be denied.

### 5.    Fraudulent Inducement and Negligent Misrepresentation

Ceridian next seeks judgment as to Guhne's claims for fraudulent inducement and negligent misrepresentation.  As these claims are based on the same conduct and Ceridian's response to both is the same (see Doc. 16 at 19), the claims are considered here jointly.

Guhne alleges that Ceridian, with the intent of removing a competitor from the marketplace, promised Guhne 75,000 shares of stock options and a quick promotion to Executive Vice President of Global Sales or Senior Vice President of North America Sales. (Doc. 1 ¶¶ 110-34.)  At the time of the representations, Guhne argues, Ceridian knew or should have known that they were false and calculated to deceive Guhne into accepting Ceridian's offer of employment.  (Id.)  In response, Ceridian argues that these claims fail as a matter of law because the alleged promises were not material misrepresentations, the promises were superseded by the offer letter and barred by its merger clause, and any reliance on

21

Case 1:20-cv-00925-TDS-JLW   Document 22   Filed 03/26/21   Page 21 of 40

promises that conflicted with the terms of the offer letter was unreasonable.[10] (Doc. 16 at 17; Doc. 21 at 7-8.) In response, Guhne argues that the promises were definite and clear material misrepresentations, and that the reasonableness of his reliance is a question of fact for the jury. (Doc. 19 at 20-21.)

The essential elements of fraud in the inducement are: (i) the defendant made a false representation or concealed a material fact he had a duty to disclose; (ii) the false representation related to a past or existing fact; (iii) the defendant made the representation knowing it was false or made it recklessly without knowledge of its truth; (iv) the defendant made the representation

---

[10] Ceridian also suggests in a footnote that Guhne has failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). (Doc. 16 at 15 n.6.) Guhne does not respond to this argument. Even so, the argument is unavailing. Under Rule 9(b), while mental states may be pleaded generally, parties must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)); Fed. R. Civ. P. 9(b). District courts are reminded that the purposes of this heightened pleading standard are to give a defendant sufficient notice to formulate a defense, to protect against frivolous suits, to eliminate suits where all the fraud facts are learned after discovery, and to protect defendants from harm to their goodwill and reputation. Humana, Inc. v. Ameritox, LLC, 267 F. Supp. 3d 669, 677 (M.D.N.C. 2017) (citing Harrison, 176 F.3d at 784). Thus, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784. These goals are satisfied here. Guhne alleges that the misrepresentations were made to him by CRO Malley in early 2018, in discussions leading up to his acceptance of Ceridian's offer in April 2018. He further identifies with particularity the misrepresentations made and what Ceridian gained thereby, and he alleges that Ceridian authorized Malley to make the misrepresentations.

22

intending to deceive the plaintiff; (v) the plaintiff reasonably relied on the representation and acted upon it; and (vi) the plaintiff suffered injury. Johnson v. Phoenix Mut. Life Ins. Co., 266 S.E.2d 610, 615 (N.C. 1980); see also Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988). "[A] misrepresentation or omission is 'material' if, had it been known to the party, it would have influenced the party's judgment or decision to act." Piazza v. Kirkbride, 827 S.E.2d 479, 489 (N.C. 2019) (quoting Latta v. Rainey, 689 S.E.2d 898, 909 (N.C. Ct. App. 2010)). Although "a mere promissory representation will not support an action for fraud," Augustson v. Bank of Am., N.A., 864 F. Supp. 2d 422, 431 (E.D.N.C. 2012) (quoting Braun v. Glade Valley Sch., Inc., 334 S.E.2d 404, 407 (N.C. Ct. App. 1985)), "[a] promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply," Phoenix Mut., 266 S.E.2d at 616. See also Vincent v. Corbett, 94 S.E.2d 329, 331 (N.C. 1956). Similarly, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 367 S.E.2d 609, 612 (N.C. 1988) (citations omitted). To establish justified reliance, a party must make a reasonable inquiry regarding the alleged statement.

23

Dallaire v. Bank of Am., N.A., 760 S.E.2d 263, 267 (N.C. 2014) (citing Pinney v. State Farm Mut. Ins. Co., 552 S.E.2d 186, 192 (N.C. Ct. App. 2001)).

Ceridian's first argument – that Malley's alleged misrepresentations to Guhne were not material – fails at the present stage. Ceridian argues that Malley made no material misrepresentation because the alleged statements involved future unknown occurrences and therefore constitute promissory representations. Although a "mere promissory representation" will generally not support an action for fraud, a promissory misrepresentation may constitute fraud if the misrepresentation is made with intent to deceive and with no intent to comply with the stated promise or representation. Phoenix Mut., 266 S.E.2d at 616. At this stage, Guhne has pleaded that the misrepresentations were material in that they caused him to leave his employment with Ultimate. (Doc. 1 ¶ 117.) He further alleges that these misrepresentations were made with knowledge of their falsity with intent to deceive. (Id. ¶ 116.) As the court must accept the allegations of the complaint as true at the current stage, this is sufficient to survive judgment on the pleadings.

Similarly, Ceridian's argument that Guhne's claims are barred by the merger clause fails as well. Under North Carolina law, "[w]here [as here] there is a claim for fraud in the inducement, defenses based upon the fraudulently induced contract will not bar

24

the claim." <u>Tradewinds Airlines, Inc. v. C-S Aviation Servs.</u>, 733 S.E.2d 162, 169 (N.C. Ct. App. 2012), <u>disc. rev. denied</u>, 743 S.E.2d 189 (N.C. 2013); <u>see also</u> <u>Laundry Mach. Co. v. Skinner</u>, 34 S.E.2d 190, 192-93 (N.C. 1945) (holding that parol evidence could be introduced in contravention of an integration clause in a contract where there was fraud in the inducement, which "vitiates the contract"); <u>Zinn v. Walker</u>, 361 S.E.2d 314, 318 (N.C. Ct. App. 1987) (holding that merger clauses, while generally upheld, will not bar claims where fraud, bad faith, or negligent omissions are established); <u>Silicon Knights, Inc. v. Epic Games, Inc.</u>, No. 5:07-CV-275-D, 2011 WL 1134453, at *11 (E.D.N.C. Jan. 25, 2011) ("[T]he weight of authority holds that disclaimers should not be given preclusive effect where there is a triable issue that entry into the agreement containing the disclaimer was induced by fraud or negligent misrepresentation by the party invoking the disclaimer, as here."), <u>report and recommendation adopted</u>, No. 5:07-CV-275-D, 2011 WL 1134447 (E.D.N.C. Mar. 24, 2011). Thus, the mere existence of a merger clause will not bar Guhne's claim for fraudulent inducement or negligent misrepresentation.

The remaining issue is whether Guhne has sufficiently alleged reasonable reliance on the alleged misrepresentations. In fraudulent inducement and negligent misrepresentation claims, the question of reasonable reliance is similar. <u>Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP</u>, 513 S.E.2d 320, 327 (N.C. 1999).

25

For both causes of action, whether the plaintiff reasonably relied on the defendant's representations is ordinarily a question for the jury "unless the facts are so clear as to permit only one conclusion." Id. (internal citation omitted). Where a plaintiff alleges misrepresentations that are "directly contrary" to the express terms of a written contract, reliance is unreasonable as a matter of law. Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 518 (E.D.N.C. 2016) (collecting cases), aff'd, 698 F. App'x 750 (4th Cir. 2017).

Here, Guhne alleges two material misrepresentations: (1) the promise of his quick promotion to Executive Vice President of Global Sales or Senior Vice President of North America Sales and (2) the promise to grant him 75,000 shares of stock options. These representations are in tension with the terms of his offer letter, which provide that Guhne was to be hired into a position of District Vice President Sales, Enterprise and that a recommendation would be made to the Board to grant him 75,000 shares of common stock. The issue is whether Guhne has successfully pleaded reasonable reliance despite this tension. In relation to the promise of a quick promotion, Guhne has failed to do so. Although the merger clause does not bar Guhne's claim for fraudulent inducement or negligent misrepresentation, the terms of the merger clause are contrary to the promise of a promotion such that reliance upon that promise was unreasonable as a matter of

26

law.  The merger clause indicates that "[n]o promises, representations, or understandings are part of this agreement unless referred to in this letter." (Doc. 12-1 at 3.)  The promise of a quick promotion, or any reference to future promotions, do not appear within the offer letter.  Therefore, the alleged promise of a quick promotion is directly contrary to the terms of the offer letter, and reliance on such promise would be unreasonable as a matter of law.[11]

In relation to the promise of stock options, however, the facts are not "so clear as to permit only one conclusion." Compare Int'l Harvester Credit Corp. v. Bowman, 316 S.E.2d 619, 621 (N.C. Ct. App. 1984) (finding facts clear, despite guarantors' indication that they subjectively did not know that they could incur future obligations, where the guaranty contract indicated the guarantors "may hereafter" become liable) and Eastway Wrecker Serv., Inc. v. City of Charlotte, 599 S.E.2d 410, 414 (N.C. Ct. App. 2004) (finding reliance unreasonable where plaintiff relied on representations made by City personnel regarding contract variations while the contract itself provided that only the City Manager could approve variations), aff'd, 622 S.E.2d 495 (N.C. 2005) with Marcus Bros., 513 S.E.2d at 328 (finding facts not

---

[11] The terms of the alleged promise are also quite vague.  Although Guhne has identified two positions to which he was allegedly promised a promotion, he does not identify when such promotions were promised to occur, nor does he detail other material aspects of the promotion, such as his expected salary.

clear where creditor relied on financial statements showing a general partner owed money to the company, but the creditor was unaware that the general partner had no assets and the debt was worthless). Here, the promise of 75,000 shares of stock options is not directly contrary to the recommendation for 75,000 shares set out in the offer letter. The promise was allegedly made by a high-level executive who told Guhne that "while the stock options required approval by Ceridian's Board of Directors, such approval was only a mere formality and that the Board always approved the awards as offered." (Doc. 1 ¶ 20.) The promise is not inconsistent with the offer letter in that Guhne could have both been promised a recommendation for a stock award and also been assured that the Board's approval was a certainty.[12] Given this, the reasonableness of Guhne's reliance cannot clearly be determined as a matter of law but raises an issue of fact. Therefore, Ceridian's motion for judgment on the pleadings in relation to Guhne's fraudulent inducement and negligent misrepresentation claims to the extent the claims relate to the alleged promise of 75,000 stock options

---

[12] The merger clause indicates that "[n]o promises, . . . are part of this agreement unless <u>referred to</u> in this letter." (Doc. 12-1 at 3 (emphasis added).) At the present stage, it is unclear what it means for a promise to be "referred to" in the letter, which mentions the recommendation of 75,000 shares. However, "any determination regarding the effect of the merger clause would require construction of the contracts and factual determinations beyond the scope of a Rule 12(b)(6) motion." <u>Kaplan Cos. v. PeopleSoft USA, Inc.</u>, No. 1:03CV01014, 2005 WL 8167093, at *5 (M.D.N.C. Jan. 19, 2005).

will be denied.

To the extent Ceridian argues that judgment on the pleadings is appropriate because Ceridian did not make any false statements with an intent to deceive (Doc. 16 at 18), this is an issue of fact. The pleadings sufficiently allege that the statements made by Malley were false and intended to induce Guhne to accept employment with Ceridian. Whether these claims are true is not suitable for resolution at the present stage.[13]

### 6. UDTPA

Ceridian next moves for judgment as to Guhne's claim for violations of the UDTPA, which alleges that Ceridian made false representations to induce Guhne to leave Ultimate in order to injure its competition. (Doc. 1 ¶¶ 110-22.) Ceridian argues that judgment on the pleadings is appropriate because the acts alleged are not unfair or deceptive under the UDTPA, and because the UDTPA does not apply to acts within an employer-employee relationship.

---

[13] Ceridian also suggests in a footnote that judgment on the pleadings is appropriate as to the negligent misrepresentation claim because Guhne has not alleged that Ceridian owed a duty of care. (Doc. 16 at 19 n.7.) Under North Carolina law, a breach of duty in negligent misrepresentation claims occurs when, "[o]ne who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, [and thus] is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Jordan v. Earthgrains Baking Cos., 576 S.E.2d 336, 340 (N.C. Ct. App. 2003) (citations omitted). Although Guhne's complaint appears to allege facts showing that Malley met this standard, neither party has sufficiently argued this issue. As such, judgment on the pleadings on this basis will be denied.

29

(Doc. 16 at 20-21.)  In response, Guhne argues that the alleged fraudulent statements can serve as the basis for a claim because they were made prior to the existence of an employer-employee relationship and with the intention of harming Ceridian's competitor.  (Doc. 19 at 23.)

Under the UDTPA, "unfair or deceptive acts or practices in or affecting commerce" are unlawful.  N.C. Gen. Stat. § 75-1.1(a).  "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013) (brackets and internal citations omitted).  An act or practice is considered unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and deceptive if it "has the capacity or tendency to deceive."  Bob Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 322-23 (N.C. Ct. App. 2006) (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)).

Ceridian's arguments that the acts alleged are not unfair or deceptive under the UDTPA rely on the same arguments it brings in relation to Guhne's fraudulent inducement and negligent misrepresentation claims.  (Doc. 16 at 19.)  The court has already found those arguments unpersuasive, in part, for the reasons stated

in Section E. _supra_.  In line with that analysis, as it pertains
to the alleged promise of 75,000 shares of stock options, judgment
on his UDTPA claim will not be granted on this basis; however,
judgment will be granted in favor of Ceridian on his UDPTA claim
to the extent it is based upon the promise of a quick promotion.
_See_ Section E., _supra_.

Ceridian's next contention is that the UDTPA does not apply
in the context of an employer-employee relationship because
transactions internal to a single company are not "in or affecting
commerce."  While it is true that the UDTPA generally does not
apply to employer-employee disputes, where "the gravamen of
[plaintiff's] [c]omplaint involves alleged fraudulent statements
made prior to employment and designed to induce [plaintiff] to
enter into an employment relationship," the claim survives.  _Fusco
v. Northpoint Erm, LLC_, No. 3:15CV289, 2016 WL 164329, at *3
(W.D.N.C. Jan. 13, 2016) (citing _United Labs., Inc. v. Kuykendall_,
370 S.E.2d 375 (N.C. 1988)).  Here, the alleged misrepresentations
were made prior to the existence of an employer-employee
relationship, the statements were allegedly made to injure
Ceridian's competition, and Guhne suffered injuries as a result.
The court is therefore disinclined to dismiss the claim as Guhne
has stated a plausible violation of the UDTPA in so far as it

relates to the alleged promise of 75,000 shares of stock.[14]

### 7. Unjust Enrichment

Ceridian next moves for judgment as to Guhne's unjust enrichment claim. Pleading in the alternative, Guhne bases his claim on both the nonpayment of his commissions and Ceridian's failure to provide him with the full 75,000 stock options that he was allegedly promised. (Doc. 1 ¶¶ 149–50.) Ceridian argues that judgment on the pleadings should be granted because these claims and the relationship between the parties is expressly governed by a contract. (Doc. 16 at 21.) Ceridian also argues that Guhne has received all compensation he was promised. (Doc. 16 at 22.) Guhne replies that dismissal of this claim is premature because it is pleaded in the alternative and that any contention about the value of the stock he received raises an issue of fact not amenable to decision at this stage. (Doc. 19 at 16–17.)

The elements of an unjust enrichment claim under North Carolina law are: "(1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." TSC Rsch. LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008). The doctrine of unjust enrichment applies in "circumstances

---

[14] Guhne does not re-allege his claims pertaining to the nonpayment of his commissions in this cause of action. (See Doc. 1 ¶¶ 138–40.) Rather, this cause of action is limited to the representations made to him prior to the acceptance of Ceridian's offer. (See id.)

32

where it would be unfair for the recipient to retain [benefits] without the contributor being repaid or compensated." Homeq v. Watkins, 572 S.E.2d 871, 873 (N.C. Ct. App. 2002) (quoting Collins v. Davis, 315 S.E.2d 759, 761 (N.C. Ct. App. 1984)). "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." Id. (quoting Norman v. Nash Johnson & Sons' Farms, Inc., 537 S.E.2d 248, 266 (N.C. Ct. App. 2000)). A claim for unjust enrichment cannot survive where an express contract governs a party's claim. Booe v. Shadrick, 369 S.E.2d 554, 570 (N.C. 1988). As such, while an unjust enrichment claim may be pleaded in the alternative, such a claim should ordinarily be dismissed where the existence of a governing contract is undisputed. See Jacobs Vehicle Sys., Inc. v. Yang, No. 1:12CV00181, 2013 WL 4833058, at *11 (M.D.N.C. Sept. 10, 2013) (citing Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 696 (M.D.N.C. 2011)).

As to the commissions, Ceridian and Guhne agree that the nonpayment is governed by the Commission Plan, a contractual agreement. (See id. ¶¶ 58-60, 98; Doc. 12 ¶¶ 58-60.) Therefore, to this extent, judgment on the pleadings will be granted in favor of Ceridian.

Guhne's claim arising from the promised 75,000 stock options rests on a potentially different footing, as it is based, at least in part, on representations allegedly made to induce the offer letter agreement with Ceridian. (See Doc. 1 ¶ 113 (discussing fraudulent inducement claim based on the promise of 75,000 shares of stock options); see also Section E., supra.) To that extent and for the reasons already noted, it remains to be seen whether the claim is barred by the parties' contractual agreement. However, as the claim is pleaded in the alternative and the court need not make this determination at this time, it will defer any definitive ruling. Fed. R. Civ. P. 12(i) ("If a party so moves, any defense listed in Rule 12(b)(1)-(7) — whether made in a pleading or by motion — and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial."); see also Campbell Sales Grp., Inc. v. Marx, No. 1:10CV55, 2011 WL 13134278, at *4 (M.D.N.C. Aug. 30, 2011).

## B. Alternative Motion to Dismiss for *Forum Non Conveniens*

Ceridian moves, in the alternative, for the dismissal of claims three (violation of the WHA) and eight (unjust enrichment) on the basis of the mandatory forum selection clause embedded in the Commission Plan's terms and conditions (Doc. 12-3). (Doc. 16 at 22-24.) Specifically, Ceridian argues that the commission plan documents contain a forum selection clause which states that "any dispute regarding the [Commission] Plan will be exclusively venued

34

in Minnesota State District Court." (Doc. 16 at 24; see also Doc. 12-3 at 3.) Ceridian urges that, as Guhne's claims for violation of the WHA and, in part, for unjust enrichment involve disputed commissions, the court should dismiss claims three and eight for *forum non conveniens* in accordance with the forum selection clause.[15] Because judgment on the pleadings will be granted in favor of Ceridian on both of these claims to the extent they implicate the Commission Plan, the court need not consider this alternative motion and it will be denied as moot.

### C. Motion to Seal

Ceridian has moved to seal the copies of its 2019 global sales policy (Doc. 12-4) and Guhne's 2019 sales incentive compensation plan (Doc. 12-5) that were filed with its answer. (Doc. 13.) Ceridian has provided redacted versions of both documents for public viewing. (Docs. 12-4, 12-5.) Although Ceridian has provided an unredacted version of Guhne's 2019 sales incentive compensation plan (Doc. 17-1), it has not provided an unredacted copy of the 2019 global sales policy. At present, the motion to seal has been pending since November 20, 2020, and no objection to the motion has been made. See M.D.N.C. L.R. 5.4(c)(5).

When a party makes a request to seal judicial records, a

---

[15] Ceridian does not contend, nor could it, that Guhne's unjust enrichment claim relating to the alleged promise of 75,000 stock options is governed by the Commission Plan documents and the associated forum selection clause. (See Doc. 16 at 22-24.)

district court "must comply with certain substantive and procedural requirements." Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the court must (1) give the public notice and a reasonable opportunity to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. Id. "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Id. (internal quotation marks and alteration omitted). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents," such as materials filed in connection with a summary judgment motion. Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted). The Fourth Circuit has "conclude[d] that the First Amendment guarantee of access should not be extended to documents filed in connection with a motion to dismiss" because "[a] motion to dismiss tests only the facial sufficiency of the complaint[] [and] a court may not consider any materials outside the pleadings." In re Pol'y Mgmt. Sys. Corp., 67 F.3d 296, 1995

WL 541623, at *3 (4th Cir. 1995) (unpublished table decision).[16]
As a motion for judgment on the pleadings applies a standard
similar to that of a motion to dismiss under 12(b)(6), it is likely
that the First Amendment guarantee of access does not apply to
documents filed in support of such a motion.  See U.S. Tobacco
Inc. v. Big S. Wholesale of Va., LLC, No. 5:13-CV-527-F, 2014 WL
1285774, at *2 (E.D.N.C. Mar. 27, 2014) (indicating, on motion for
judgment on the pleadings, that "[t]he parties' briefing suggests
[] only the common law right of access applies . . . and the court
has not located any authority to the contrary").  However, even
under the more stringent First Amendment standard — under which
Ceridian argues — its burden has been met.

    "The burden to overcome a First Amendment right of access
rests on the party seeking to restrict access, and that party must
present specific reasons in support of its position." Wash. Post,
386 F.3d at 575; see Press-Enter. Co. v. Superior Ct., 478 U.S. 1,
15 (1986) ("The First Amendment right of access cannot be overcome
by [a] conclusory assertion.").  The public's right of access "may
be abrogated only in unusual circumstances." Stone, 855 F.2d at
182.  Evaluating whether these "unusual circumstances" exist in a
particular case is conducted in light of the "specific facts and

---

[16] Unpublished opinions of the Fourth Circuit are not precedential but
can be cited for their persuasive, but not controlling, authority. See
Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

37

circumstances" of the case at issue.  See <u>Wash. Post</u>, 386 F.3d at 579.  In a criminal case involving motions and hearings to which the public had a First Amendment right of access, the Fourth Circuit held that the following factors were relevant when balancing the government's interest in secrecy and the public's right to access: "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records."  <u>In re Knight Publ'g Co.</u>, 743 F.2d 231, 235 (4th Cir. 1984) (citing <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597–608 (1978)); <u>see</u> <u>also</u> <u>Nixon</u>, 435 U.S. at 598 (noting that public access may be inappropriate for "business information that might harm a litigant's competitive standing").  Numerous district courts in this circuit have applied these factors in civil cases. <u>See, e.g.</u>, <u>Adler v. CFA Inst.</u>, No. 1:11–CV–1167, 2012 WL 3257822, at *1 (E.D. Va. Aug. 7, 2012); <u>Mitchell v. Smithfield Packing Co.</u>, No. 4:08–CV–182–H, 2010 WL 4877054, at *1 (E.D.N.C. Nov. 24, 2010); <u>Tustin v. Motorists Mut. Ins. Co.</u>, 668 F. Supp. 2d 755, 759 (N.D. W. Va. 2009); <u>Silicon Knights, Inc. v. Epic Games, Inc.</u>, No. 5:07–CV–275–D, 2008 WL 3914463, at *3 (E.D.N.C. Aug. 22, 2008).

The documents sought to be sealed were filed in conjunction with Ceridian's answer and motion for judgment on the pleadings.

38

As discussed above, they are relevant and admissible and were available for consideration in connection with the present motion. Because the documents contain confidential internal information that would provide a significant advantage to Ceridian's competitors, the court relied on these documents in its foregoing analysis, and the motion to seal is unopposed, the court will grant the motion. See also Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., No. 1:12CV260, 2014 WL 12594127, at *5 (M.D.N.C. Sept. 30, 2014) ("The same protection from disclosure generally applies to confidential and proprietary business records like the [compensation plan], which are not typically published to the public.").

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion for judgment on the pleadings and dismissal based on *forum non conveniens* (Doc. 15) is granted in part and denied in part as follows:

1. The motion for judgment on pleadings is GRANTED as to claim three (unpaid wages under the Wage and Hour Act), and this claim is DISMISSED WITH PREJUDICE;

2. The motion for judgment on the pleadings is DENIED as to claim four (breach of contract);

3. The motion for judgment on the pleadings as to claims five (fraudulent inducement), six (negligent misrepresentation),

39

seven (violations of the UDPTA), and eight (unjust enrichment) is DENIED to the extent the claims are based upon the alleged promise of 75,0000 shares of stock options, but is otherwise GRANTED and those claims are accordingly DISMISSED WITH PREJUDICE to that extent; and

    4. The alternative motion to dismiss claims three and eight for *forum non conveniens* is DENIED AS MOOT.

    IT IS FURTHER ORDERED that Ceridian's motion to seal (Doc. 13) is GRANTED.

/s/   Thomas D. Schroeder
United States District Judge

March 26, 2021